IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re ) | |
| ) | |
| STACEY JO RIDLEY ) | Case No.  15-20672 |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| PATRICK S. LAYNG, United States ) | |
| Trustee for Region 19 ) | |
| Plaintiff, ) | |
| v. ) | Adv. No.  15-2030 |
| STACEY JO RIDLEY ) | |
| Defendant. ) | |

FILED
9:13 am, 5/9/17
Tim J. Ellis
Clerk of Court

**<u>OPINION ON THE UNITED STATES TRUSTEE'S COMPLAINT
FOR THE REVOCATION OF DISCHARGE</u>**

This matter came before the court for trial on February 28, 2017, on the complaint filed by Plaintiff Patrick S. Layng, United States Trustee for Region 19, and the answer filed by Debtor/Defendant Stacey Jo Ridley. The parties were represented as stated on the record. At the conclusion of the trial, the court took the matter under advisement. Having reviewed the record, testimony and documentary evidence, the court is prepared to rule.

**Jurisdiction**

The court has jurisdiction of the adversary proceeding under 28 U.S.C. §§ 1334(a) and 157(a). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under

28 U.S.C. § 157. The adversary proceeding is before the court under 11 U.S.C. § 727(a)(2), (a)(4)(A), and Fed. R. Bankr. P. 4004.[1]

**Background**

The parties established the following facts through admissions, testimony, and stipulation of the parties.[2]

Ms. Ridley filed her chapter 7 bankruptcy petition and schedules on November 25, 2015, through her attorney, Greg L. Goddard. Prior to Ms. Ridley filing for bankruptcy protection, her stepfather, Charles Evitt, died. A Petition for the Probate of Will (Petition) was filed on October 15, 2013, in the District Court for the Fourth Judicial District of the State of Wyoming in and for Johnson County. The Petition evidences the existence of the Last Will and Testament of Charles H. Evitt commencing Mr. Evitt's probate matter. Mr. Evitt's Will designated his surviving spouse, Mary Jo Evitt (aka Jodi Evitt), and his daughters Leslie Hiatt and Sandra Evitt, as the co-personal representatives. Mary Jo Evitt is Ms. Ridley's mother. The Petition for Probate provided that Ms. Ridley was a beneficiary of "the decedent" under Mr. Evitt's Will as it bequeathed "the sum of $25,000 to Stacy Ridley, provided that she shall survive [him] by thirty (30) days." There were no other specific cash bequests set forth in Mr. Evitt's Will.

On September 9, 2015, the co-personal representatives filed their Verified Interim Report and Accounting, Petition for Partial Distribution, and Application for Continuance (Report). The Report provided that "certain liquidations of assets of the decedent h[ad] been made by the co-personal representatives" including liquidation of personal and real property. Section 8 of the Report provided "Under the terms of the Last Will and Testament of the decedent, the distributees of the estate are: Stacy Ridley c/o Greg L. Goddard, 412 N. Main Street, Buffalo,

---

[1] Unless otherwise indicated, all future statutory references are to the United States Code, Title 11.
[2] Final Pretrial Order, ECF No. 27, p. 4.

WY 82834." The Report further provided that "the Co-Personal Representatives have agreed to the retention in the estate of the sum of $123,278.33 for ongoing estate administration expenses … and cash reserved for specific request." Mary Jo Evitt signed the Report.

On September 15, 2015, Ms. Ridley filed a Waiver of Notice of Hearing for Verified Interim Report and Accounting, Petition for Partial Distribution, and Application for Continuance (Waiver) in the state probate matter. Ms. Ridley previously executed the Waiver on September 6, 2015. On September 16, 2015, the court entered an Order Approving Verified Interim Report and Accounting, Petition for Partial Distribution, and Application for Continuance Estate of Charles H. Evitt (Order). The Order approves the co-personal representatives' interim distribution in the administration of the estate. The Order provides the following statement, "Cash reserved for specific bequest: $25,000.00." Mr. Goddard signed the Order, approving it as to form.

Mr. Goddard has a long-term professional relationship with Ms. Ridley, her mother, and the family. Mr. Goddard was the attorney for Mary Jo Evitt in the state probate matter and has known her since the 1970s. He has known Ms. Ridley "probably since she was born. Ms. Ridley first came to Mr. Goddard in 2011 about filing for bankruptcy. The bankruptcy did not proceed at that time. From 2011 to 2015, Mr. Goddard had contact with Ms. Ridley while dealing with the Evitts' medical problems and the state probate matter. Mr. Goddard would talk or see Ms. Ridley or she would come in with her mother, Mrs. Evitt.

Ms. Ridley is a former registered nurse with the Wyoming State Board of Nursing. She provided medical assistance to Mr. Evitt during his illness. Her license expired on December 31, 2014. This and other financial pressures caused Ms. Ridley to proceed with her bankruptcy. Ms. Ridley signed her petition and schedules under penalty of perjury. Question 20 on Schedule B

required Ms. Ridley to list: "Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust." In response to Question 20 on Schedule B, she checked the box "NONE."

Mr. Goddard, on behalf of Ms. Ridley, filed the signed petition and schedules on September 25, 2015, commencing Case No. 15-20672. Randy Royal, Esq. was appointed as the Chapter 7 trustee. Mr. Royal conducted Ms. Ridley's 341 meeting of creditors on November 17, 2015. Ms. Ridley never disclosed the existence of the cash bequest on her Schedule B or to the Trustee at the 341 meeting. Nor did Ms. Ridley ever file an amended schedule B with the Bankruptcy Court disclosing the cash bequest. The U.S. Trustee filed its complaint on December 10, 2015, seeking to deny Ms. Ridley's discharge based on her failure to disclose.

**Analysis**

The U.S. Trustee seeks to deny Ms. Ridley's discharge for fraudulent concealment of her interest as a beneficiary and heir as provided by the Will of her stepfather, Charles Evitt, for $25,000.00. The U.S. Trustee alleges she failed to disclose her interest on Schedule B of her petition and through her testimony at the 341 meeting of creditors.[3] In its second claim, the U.S. Trustee alleges that Ms. Ridley knowingly and fraudulently made a false oath, upon providing testimony at the 341 meeting of creditors, as she knew of her interest as a beneficiary and heir and failed to advise the Chapter 7 Trustee.[4] In her Answer, Ms. Ridley asserts that she relied upon advice of counsel, and her emotional, mental and medical condition at the time, affected her ability to form the requisite intent.

---

[3] § 727(a)(2)(A) and (B).
[4] § 727(a)(4)(A).

1. <u>General standard for revoking/objecting to discharge</u>

In weighing the facts put forward in a contest over a discharge, the court must bear in mind the beneficial policy of allowing honest debtors to receive a fresh start in life.[5] The Bankruptcy Code serves to relieve the honest debtor from the weight of oppressive indebtedness, and permit the debtor to start afresh, free from the obligations and responsibilities consequent upon misfortunes.[6] Jurisprudence is unequivocal that objections to discharge are to be construed liberally in favor of a debtor and strictly against creditors in order to further the fresh start policy of the Code.[7] Totally barring discharge is an extreme penalty.[8] Because a debtor's full disclosure and cooperation are necessary for the bankruptcy system to function, those who seek its shelter must provide complete, truthful and reliable information.[9]

As movant, the U.S. Trustee has the burden to prove the grounds for denial of discharge by a preponderance of the evidence.[10] Plaintiff need prove only one ground for denial of discharge because the provisions of § 727(a) are phrased in the disjunctive.[11] The discharge exceptions for asset concealment under § 727(a)(2) and false oath under § 727(a)(4) usually go hand in hand because a debtor who fraudulently conceals assets in the petition has also necessarily made a false oath by signing the petition. Thus, courts finds it unnecessary to analyze separately the evidence with respect to each section because if debtor intended to defraud creditors by omitting assets from the petition, the debtor also filed that petition under false

---

[5] *Grogan v. Garner*, 111 S. Ct. 654, 659 (1991); *In re Brown*, 108 F.3d 1290, 1294 (10th Cir. 1997); *In re Christensen*, 561 B.R. 195, 215-16 (Bankr. D. Utah 2016).
[6] *Local Loan Co. v. Hunt*, 54 S.Ct. 695, 699 (1934).
[7] *In re Butler*, 377 B.R. 895, 915 (Bankr. D. Utah 2006).
[8] *Id.*
[9] *In re DiGesualdo*, 463 B.R. 503, 518 (Bankr. D. Colo. 2011).
[10] *In re Garland*, 417 B.R. 805, 810–11 (B.A.P. 10th Cir. 2009).
[11] *Id.*

oath.[12] Therefore, in the facts specific to this case, the court finds an analysis pursuant to § 727(a)(4) more appropriate.

2. Section § 727(a)(4)(A) analysis

The U.S. Trustee alleges Ms. Ridley made a false oath by knowingly and fraudulently failing to disclose the inheritance on her petition and schedules. Section 727(a)(4)(A) states, "The court shall grant the debtor a discharge, unless – the debtor knowingly and fraudulently, in or in connection with the case – made a false oath or account." Section 727(a)(4)(A) "is designed to ensure that the debtor provides honest and reliable information to the trustee and others interested in the administration of the estate without their having to conduct costly investigations to discover the debtor's true financial condition."[13] To deny a debtor's discharge under § 727(a)(4)(A), the movant must demonstrate that the debtor (1) knowingly and fraudulently, (2) made a false oath, and (3) that the oath related to a material fact.[14]

   a.   *Made a false oath*

In this case, Ms. Ridley, executed her bankruptcy petition, "under penalty of perjury that the information provided in this petition is true and correct." At the time she executed, she had knowledge of her inheritance, as the probate of Mr. Evitt's Will began in 2013; and, she was living with and taking care of her mother, who was a co-personal representative of the probate estate. A debtor's statements at a § 341 meeting constitute statements under oath for purposes of § 727(a)(4).[15] Additionally, Ms. Ridley testified, under oath, at the § 341 meeting of creditors,

---

[12] *In re Voccia*, 477 B.R. 625, 633 (Bankr. E.D. Va. 2011); *In re Allen*, 553 B.R. 916, 922 (Bankr. M.D. Fla. 2016) (finding a debtor who fraudulently undervalued assets, fraudulently failed to disclose pre-petition transfers, or fraudulently failed to schedule assets should be raised under § 727(a)(4)).
[13] *In re DiGesualdo*, 463 B.R at 521.
[14] *In re Garland*, 385 B.R. 280, 298 (Bankr. E.D. Okla. 2008), aff'd, 417 B.R. 805 (B.A.P. 10th Cir. 2009). *See also In re Osborne*, 476 B.R. 284, 294 (Bankr. D. Kan. 2012).
[15] *In re DiGesualdo*, 463 B.R. 503, 522 (Bankr. D. Colo. 2011).

further perpetuating her false oath, that the petition and schedules contained a "complete and accurate list of all of [her] property. . . ." It is clear to the court, Ms. Ridley made false oaths.

    b.    *The oath related to a material fact*

A false oath's subject matter is "material" and thus sufficient to bar discharge if it bears a relationship to the debtor's business transactions or estate, or concerns the existence and disposition of his property.[16] "A statement is material where it relates to assets of a debtor's estate."[17] The oaths undertaken by Ms. Ridley related to a material fact in that the amount of the inheritance was $25,000.00, which was garnered by the Chapter 7 Trustee as the only asset available for distribution to unsecured creditors through Ms. Ridley's bankruptcy estate.

    c.    *Knowingly and fraudulently*

The last factor for the court to consider is whether Ms. Ridley made the false oath, knowingly and fraudulently. "The 'intent' element of this section must be an actual intent to defraud creditors."[18] A court may deduce fraudulent intent from the facts and circumstances of a case."[19] A movant can demonstrate fraudulent intent by showing that the debtor acted with "reckless disregard," or that a debtor does not care about the truth or falsity of a statement, which is the equivalent of knowing that the representation is false and material.[20] Reckless indifference to the truth is not sufficient by itself to establish fraudulent intent, but a court may find intent from reckless conduct, particularly "where there has been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth."[21] The requisite intent to deceive exists when a debtor, in filing a petition, schedules, or statement of financial affairs, makes statements that are

---

[16] *Id.* Emphasis added.
[17] *In re Eppers*, 311 B.R. 826, 832 (Bankr. D.N.M. 2004).
[18] *In re Garland*, 385 B.R. 280, 295 (Bankr. E.D. Okla. 2008), *aff'd,* 417 B.R. 805 (B.A.P. 10th Cir. 2009).
[19] *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990).
[20] *In re DiGesualdo*, 463 B.R. 503, 522-23 (Bankr. D. Colo. 2011).
[21] In re *Khalil*, 379 B.R. 163, 173 (B.A.P. 9th Cir. 2007)*; see also In re Killian*, No. ADV 07-3315, 2008 WL 5834017, at *3 (Bankr. D. Or. Nov. 17, 2008).

inconsistent or incompatible with a debtor's own knowledge and information—excluding honest mistakes.[22] "An honest mistake or oversight is not sufficient to deny a debtor his discharge."[23] "Even a false statement resulting from ignorance or carelessness does not rise to the level of 'knowing and fraudulent' sufficient to deny a discharge."[24]

> Courts may consider the following in determining reckless disregard standard:
>
> > (1) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (2) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (3) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies.[25]

The court considers it of a serious nature for a debtor to fail to review documents and then attest that she reviewed and completed the documents, especially when schedules fail to list the only exempt asset available for distribution to unsecured creditors. The court's review of Ms. Ridley's testimony finds she achieved a higher education and worked as a nurse, but does not show a financial sophistication. Also, the Trustee did not present any evidence that Ms. Ridley was given an opportunity to clarify or correct inconsistencies from the time she filed bankruptcy to the time the U.S. Trustee filed its complaint.

The U.S. Trustee argues he established Ms. Ridley's fraudulent intent through her deferral of her inheritance upon executing the Waiver.[26] Ms. Ridley admits that she submitted a pleading to the probate court that would defer distribution of her inheritance but that she did not understand this to be a tactic to avoid losing the inheritance in the bankruptcy. The court's

---

[22] *In re Michael*, 452 B.R. 908, 919 (Bankr. M.D.N.C. 2011); *see also In re Eppers*, 311 B.R. 826, 832 (Bankr. D.N.M. 2004) (finding a determination that a statement is false is insufficient to bar discharge; the debtor must know of its falsity and intentionally misstate facts in the statements and schedules).
[23] *In re Ciotti*, 448 B.R. 694, 704 (Bankr. W.D. Penn. 2011).
[24] *In re DiGesualdo*, 463 B.R. at 522.
[25] *In re Gobindram*, No. 11-75802-REG, 2014 WL 2809078, at *6 (Bankr. E.D.N.Y. June 20, 2014), *aff'd sub nom. Gobindram v. Bank of India*, 538 B.R. 629 (E.D. N.Y. 2015).
[26] ECF No. 35, UST Ex. 4.

review of the exhibits and Ms. Ridley's testimony finds that Mr. Ridley did not appear to be aware of the purpose of the Waiver she executed, as she understood it to "create transparency." The Report does show the transparent distribution of part of the estate and does not appear to be an attempt to hold the funds in abeyance and out of the Bankruptcy Court's grasp.

The court finds there is no evidence that Ms. Ridley made the false statements to defraud creditors. To the contrary, she consistently testified she knew she would lose inheritance to the bankruptcy. Additionally, Ms. Ridley admitted at the 341meeting of creditors that she was taking care of her mother because her step-father had passed. A person trying to hide inheritance would generally not raise the testator's death at the 341 meeting. Lastly, the owner of one of Ms. Ridley' major creditors, Collection Professionals, is the accountant for the Mr. Evitt's probate estate, and married to Ms. Ridley's step-sister. No reasonable debtor would think he or she could hide an asset from the creditor responsible for cutting the probate estate's distribution check.

3. <u>Court's Discretion</u>

In cases such as this, where grounds for denying discharge are present, the language of § 727(a) nonetheless vests bankruptcy courts with the discretion to grant a discharge.[27] When considering how to exercise this discretion, the Court must consider the purposes of the Bankruptcy Code.[28] A central purpose of the Bankruptcy Code is to give debtors a fresh start by discharging their preexisting debts.[29] The Code, however, does not dole out this substantial benefit indiscriminately. Rather, the opportunity for an unencumbered new beginning is reserved only for the honest but unfortunate debtor.[30] Determining whether to deny discharge is

---

[27] *In re DiGesualdo* 463 B.R. at 523.
[28] *Id.* at 523-24.
[29] *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367 (2007); *see also Grogan v. Garner,* 498 U.S. 279 (1991).
[30] *Grogan,* 498 U.S. at 286-87; *In re Duncan,* 329 F.3d 1195, 1202 (10th Cir.2003).

necessarily fact-bound and requires the court's careful reflection.[31] The court must evaluate the magnitude of debtors' prepetition debt and whether a denial of discharge would make life virtually impossible. The court balances this against "the degree of heinousness evidenced by the circumstances of the violation of the bankruptcy laws which constitutes the ground for denial of discharge."[32]

This case presents a close call. Certainly, the evidence was more than sufficient to raise questions about the Debtor's carelessness during her bankruptcy case. The U.S. Trustee has made a strong prima facie case for denial of discharge. However, the court is not convinced Ms. Ridley acted with an intent to defraud her creditors. Specifically, the court believes Ms. Ridley's missteps were unintentional, and made based upon misunderstandings that counsel could have corrected had he complied with his professional obligations to confer with his clients.[33] While the court, in these limited circumstances, excuses Ms. Ridley of her negligence in failing to adequately review her schedules, it will not excuse counsel who fail to ensure their clients do review their petitions before affixing their signatures. Ultimately, appropriate steps were taken to turn over the funds to the Chapter 7 Trustee. Thus, in the end, the funds are available for distribution to creditors.

4. Advice of counsel as defense

Courts routinely recognize that reliance on advice of counsel is not a defense in a denial of discharge action where it is evident that the debtor should have listed the asset in the schedule.[34] Additionally, debtors cannot rely on the advice of counsel defense regarding errors in

---

[31] *In re DiGesualdo*, 463 B.R. at 524.
[32] *Id.* (citing *In re Hacker*, 90 B.R. 994, 997–98 (Bankr. W.D. Mo.1987)).
[33] ECF No. 35, UST Ex. 10. Greg L. Goddard, Esq., entered into a Plea Agreement with the U. S. Attorney, pleading guilty to contempt of court, ". . . knowingly made at least one material misrepresentation of [his] client's assets [in Ms. Ridley's bankruptcy petition and schedules].
[34] *In re Weddington*, 457 B.R. 102 (Bankr. D. Kan. 2011).

the Schedules and Statement of Financial Affairs where debtors have declared under penalty of perjury that they have read the documents, and to the best of their knowledge, the documents were true and correct.[35]

**Conclusion**

In conclusion the court finds Debtor made false oaths in the schedules submitted to the court and the testimony at the § 341 meeting of creditors. That false oath was material as it involved a substantial asset that the Chapter 7 trustee could garner for distribution to Ms. Ridley's unsecured creditors. The U.S. Trustee satisfied its burden regarding these elements of its § 727(a)(4)(A) claim by a preponderance of the evidence. However, this court finds Ms. Ridley did not act with the intent to defraud her creditors. Her actions were unintentional.

This decision constitutes the court's findings of facts and conclusions of law pursuant to Bankruptcy Rule 7052. The court shall enter a separate order.

BY THE COURT

*Cathleen D. Parker*
_____  5/9/2017
Honorable Cathleen D. Parker
U.S. Bankruptcy Court
District of Wyoming

---

[35] *In re Crest By The Sea, LLC*, 522 B.R. 540, 550 (Bankr. D.N.J. 2014).